UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ROBERT MOORE,

      Petitioner,

v.                                    CASE NO: 5:11-cv-429-Oc-23PRL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
and FLORIDA ATTORNEY GENERAL,

      Respondents.

_____/


## ORDER

A prisoner at Taylor Correctional Institution in Perry, Florida, Robert Moore applies (Doc. 1, 18) under 28 U.S.C. § 2254 for the writ of habeas corpus.[1]

**I.**    **Background and Procedural History**

An April 12, 2007, amended information in the circuit court for Citrus County, Florida, charged Moore with attempted first degree murder (count one) and aggravated battery with great bodily harm (count two).  (App. A at 11)[2]  A jury convicted Moore of one count of attempted second degree murder and one count of

---

[1] Because Moore's claims require no further factual development, an evidentiary hearing is unnecessary. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).

[2] Unless otherwise noted, the cited appendix is the appendix filed by the respondents on December 13, 2011. (Doc. 9) A citation to the trial transcript, included in Appendix "B", appears as (T. at ____).

aggravated battery.  (App. A at 203-06)  Moore received consecutive sentences of

thirty years on count one and fifteen years on count two.  (App. A at 264-74)

The state appealed Moore's sentence and argued that the trial court erred by

failing to sentence Moore for two first degree felonies.  (App. E at 1-10)  Moore

cross-appealed his conviction and sentence.  (App. E at 11-39)  *State v. Moore*, 19

So.3d 408 (Fla. 5th DCA 2009), affirms Moore's convictions and holds that the trial

court erred in denying the state's request to re-classify the aggravated battery

conviction as a first degree felony.  (App. E at 49-52)  Neither party sought review by

the Florida Supreme Court.

On November 9, 2009, Moore was re-sentenced to two, consecutive thirty-

year terms.  (App. F at 1-21)  *Per curiam* and without an opinion, *Moore v. State*, 44

So.3d 598 (Fla. 5th DCA 2010), affirmed on September 7, 2010, and the mandate

issued on September 29, 2010.  (App. F at 17-18)

On October 25, 2010, Moore moved for post-conviction relief under Rule

3.850, Florida Rules of Criminal Procedure.  Moore raised six claims of ineffective

assistance of counsel and one claim of cumulative error.  (App. H at 1-181)  On

January 25, 2011, the Rule 3.850 motion was denied.  (App. H at 235-82)  *Per curiam*

and without an opinion, *Moore v. State*, 63 So.3d 780 (Fla. 5th DCA 2011), affirmed

on May 17, 2011, and the mandate issued on June 8, 2011.  (App. I at 46-47)

On April 19, 2012, Moore applied for the writ of habeas corpus in the district

court of appeal.  (Doc. 23 at 1-61)  The petition was denied on July 10, 2012.

(Doc. 23 at 100)  Rehearing was denied on August 10, 2012.  (App. I at 113)  Moore applied again for the writ of habeas corpus on August 30, 2012.  (App. I at 114-44)  The second application was dismissed on September 20, 2012.  (App. I at 145)  Rehearing was denied on October 31, 2012.  (App. I at 157)

On July 11, 2011, Moore applied under 28 U.S.C. § 2254 for the writ of habeas corpus.  (Doc. 1)  On November 15, 2012, Moore filed an amended petition.  (Doc. 18)[3]  In opposition (Doc. 23) to the amended petition, the respondents argue that each ground is both untimely and procedurally barred.  Moore replied to the supplemental response.  (Doc. 26)

In his amended petition, Moore raises claims one, two, three, five, seven, eight, nine, and ten.[4]  Moore alleges that trial counsel was ineffective for (1) failing to introduce evidence that the victim – Moore's wife, Angela – was the initial aggressor; (2) failing to introduce evidence that Angela was intoxicated at the time of the attack; (3) failing to impeach Angela's nine-year-old daughter, Alexis Horton; and (4) failing to impeach a police officer who testified for the state.  Moore asserts that appellate counsel was ineffective for (5) failing to advise Moore that his habeas petition would

---

[3] Under the mailbox rule, a *pro se* inmate's paper is filed when the inmate loses control over the paper by entrusting its further delivery or processing to an agent of the state. Usually, this occurs when the inmate places the document in the hands of a prison official. *Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999); *Houston v. Lack*, 487 U.S. 266 (1988).

[4] Moore raises six claims in his original petition. In the amended petition, Moore (1) restates claims one, two, three, and five of the original petition, (2) specifically states that he abandons claims four and six of the original petition, and (3) raises four new claims – claims seven, eight, nine, and ten – not raised in the original petition.  (Doc. 1; Doc. 18)

be untimely; (6) failing to argue that fundamental error resulted from improper jury instructions; (7) failing to raise as fundamental error a double jeopardy violation; and (8) failing to raise as fundamental error the use of impermissible "other crime evidence" through hearsay testimony.  (Doc. 18 at 3-50)

## II.   Governing Legal Principles

### a.    *The Antiterrorism and Effective Death Penalty Act ("AEDPA")*

Under Section 2254(d) of the AEDPA, federal habeas relief is unavailable for a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits, which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, in the decisions of the United States Supreme Court applicable at the time of the state court's decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" clearly established federal law if the state court either (1) applies a rule that contradicts the governing law as determined by the Supreme Court or (2) reaches a

result different from the result reached by the Supreme Court in an opinion discussing materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S.12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle but applies the principle to the facts of a petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). An "unreasonable application" contemplates more than mere error and requires an "objectively unreasonable" decision. *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward,* 592 F.3d at 1155.

Finally, the Supreme Court has clarified that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) (dictum). For a claim under Section 2254(d), a "determination of a factual issue made by a State court shall be presumed to be correct[,]" by a federal court, and the petitioner bears "the burden of rebutting the presumption of correctness by clear and

convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller–El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

### b. Ineffective Assistance of Counsel

*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), establishes a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88. Because a petitioner must satisfy both components of the *Strickland* test to demonstrate a violation of the Sixth Amendment, a district court need not address the performance component if a petitioner cannot meet the prejudice component (and vice versa). *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

The focus of inquiry under *Strickland's* performance component is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. In reviewing counsel's performance, a strong presumption attaches that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Indeed, a petitioner must "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436

F.3d 1285, 1293 (11th Cir. 2006). *Strickland* contemplates an assessment of "the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," and requires "highly deferential" judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

A petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Finally, the Supreme Court has clarified that, under the AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785.

**III.** <u>**Timeliness**</u>

  *a.  Moore's federal habeas corpus petition is subject to a one-year limitation.*

  Under 28 U.S.C. § 2244, as amended by the AEDPA, a one-year limitation applies to a habeas application by a person in custody pursuant to a state court judgment.  Under 28 U.S.C. § 2244(d)(1), this limitation runs from the latest of:

   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

 Moore does not allege, and neither the record nor the pleadings suggest, that the statutory triggers of Sections 2244(d)(1)(B)-(D) apply.  Therefore, the limitation is measured from the remaining statutory trigger, which is the day on which Moore's conviction was final.  28 U.S.C. §§ 2244(d)(1)(A).

> **b.    *Moore's amended federal habeas corpus petition was filed more than one year from the date Moore's conviction and sentence were final.***

Moore's sentence was final on October 6, 2010, thirty days after the appellate court's decision on Moore's direct appeal, *State v. Moore*, 19 So.3d 408 (Fla. 5th DCA 2009).  *Gonzalez v. Thaler*, 132 S. Ct. 641, 653–56 (2012), establishes that, if a defendant fails to pursue review by the Supreme Court or by a state's highest court, the defendant is not entitled to an additional ninety days within which to file a petition for the writ of certiorari.  Because he failed to seek discretionary review by the United States Supreme Court or by the Florida Supreme Court, Moore is not entitled to an additional ninety days to file a petition for a writ of certiorari in the United States Supreme Court, and his conviction was final on October 6, 2010, when the time to seek review expired.

Moore had one year from October 6, 2010 – until October 6, 2011 – to apply for a writ under Section 2254.  *See Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (limitation is calculated according to the "anniversary method" under which the limitation expires on the anniversary of the day the time began to run).  Moore applied for his first habeas petition on July 11, 2011, which was well within the AEDPA's one-year limitation.  Moore's claims in the original petition are timely.  However, because Moore's amended petition was filed on November 15, 2012, outside the one- year limitation, the claims raised in the amended petition are untimely unless tolling principles render the amended petition timely or the claims raised in the amended petition "relate back" to those raised in the original petition.

### 1. The claims raised in Moore's amended petition are not subject to statutory tolling.

Under 28 U.S.C. § 2244(d)(2), "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

Moore filed a Rule 3.850 motion for post-conviction relief on October 25, 2010, after the passage of 19 days of the one-year AEDPA limitation. (App. H)  The Rule 3.850 motion tolled the time within which to petition under Section 2254.  On June 8, 2011, the mandate issued on the appeal from the summary denial of the Rule 3.850 motion.  Of the one-year AEDPA limitation, three hundred forty-six (346) days remained.

Upon the expiration of an additional three hundred sixteen (316) days of the one-year AEDPA limitation, Moore applied for the writ of habeas corpus in the state district court on April 19, 2012. (Doc. 23 at 1-61)  The application was denied on July 10, 2012. (Doc. 23 at 100)[5]  Rehearing was denied on August 10, 2012.

_____

[5] The respondents argue that the state habeas petitions were not "properly filed" and state that because the claims raised in the first habeas petition "stemmed from [Moore's] original trial and sentencing (the appeal that was concluded [in] 2009, which ordered the resentencing), [] there was no way that they were cognizable or ruled upon by the State court at that point in the proceeding." (Doc. 23 at 3). Because a decision is unnecessary, this order assumes – without deciding – that Moore's state habeas petitions were "properly filed."  28 U.S.C. § 2244(d).

Because the claims in the amended petition are dismissed as untimely, the court will not determine whether the state habeas petitions were properly filed, whether the claims tolled the one-year AEDPA limitation, or whether the claims are unexhausted and procedurally barred.

(Doc. 23 at 113)  Twenty additional days of the one-year AEDPA limitation passed and on August 30, 2012, Moore again petitioned in the state district court for a writ of habeas corpus.  (Doc. 23 at 114-44)  The second habeas petition was dismissed on September 20, 2012.  (Doc. 23 at 145)  Rehearing was denied on October 31, 2012. (Doc. 23 at 157)  Ten days of the one-year AEDPA limitation remained.  Under the mailbox rule, Moore filed his amended petition on November 15, 2012.  Therefore, Moore's new claims raised in the amended petition are not subject to statutory tolling.

### 2. The claims raised in the amended petition do not relate back to those raised in the original petition for writ of habeas corpus.

Rule 15(c), Federal Rule of Civil Procedure, governs whether an amendment to a habeas application relates back to the day of the original petition.  *See Mayle v. Felix*, 545 U.S. 644, 655 (2005).  Rule 15(c) provides that an amendment may relate back to an "original pleading" if both the pleading and the amendment arise from the same "conduct, transaction, or occurrence."  S*ee also Mayle*, 545 U.S. at 655.  An amendment to a habeas petition may relate back "so long as the original and amended petitions state claims that are tied to a common core of operative facts." *Mayle,* 545 U.S. at 664.  A new claim does not meet that standard and does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  *Mayle,* 545 U.S. at 650. Similarly, if arising from "separate conduct," an untimely claim will not relate back to the timely claim.  *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000).

"The untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." *Davenport,* 217 F.3d at 1344*; see also Mayle*, 545 U.S. at 656 (rejecting the expansive view that Rule 15(c)(2) permits relation back "so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence").

Moore's amended claims arise solely from the allegedly ineffective assistance of appellate counsel.  (Doc. 18 at 41-53)  These claims are distinct from the claims of ineffective assistance of trial counsel raised timely by Moore.  The factual bases for Moore's original claims arise from trial counsel's failure to present evidence that Moore's wife was the initial aggressor and from trial counsel's failure to effectively impeach a state witness.  The factual bases for the claims in the amended petition arise from appellate counsel's failure to argue that defective jury instructions and a double jeopardy violation resulted in fundamental error.  (Doc.18 at 49-50)  Thus, the ineffective assistance of appellate counsel claims differ in time and type from the claims in the original petition and do not relate back.  Claims seven through ten of the amended petition are dismissed as untimely.

## IV.   <u>Analysis</u>

### a.  *Claim one and claim two*

Moore asserts in claim one that counsel was ineffective for failing to interview witnesses who could testify as to Angela's (Moore's wife) irrational behavior before the attack.  (Doc. 18 at 16-18)  Moore asserts in claim two that defense counsel

should have introduced Angela's DNA and toxicology reports to show that Angela was intoxicated at the time of the attack.  (Doc. 18 at 24).  Moore also asserts that defense counsel should have introduced evidence that Moore was not intoxicated at the time of the attack.  (Doc. 18 at 24)  In both claim one and claim two Moore asserts that the post-conviction court erred by denying ground one of his Rule 3.850 motion without an evidentiary hearing.  (Doc. 18 at 7, 24)[6]

In ground one of his Rule 3.850 motion, Moore argued that trial counsel was ineffective for failing to introduce character and DNA evidence that Angela was the initial aggressor and that Moore was not legally intoxicated.  (Ex. H at 3)  The post-conviction court denied the claim on both components of *Strickland* and noted each of Moore's witness statements offered only the witness's opinion of Angela's character but that none of the statements offered an account of the incident.  (Ex. H at 237)  The post-conviction court concluded that these statements may not have been admissible at trial.

> The evidence presented at trial was overwhelming. Multiple witnesses testified to Defendant's statements that he hit the victim. Moreover, one witness testified she observed Defendant "stomping on the victim's head." Defendant's statements to law enforcement and 911 Operator admitted striking the victim. Finally, at trial Defendant admitted to striking the victim and causing the injuries. Defendant has failed to show how he was

---

[6] Moore argues that the post-conviction court erred under Florida law by failing to hold an evidentiary hearing on Moore's Rule 3.850 motion. A prisoner's challenge to the process afforded in a state post-conviction proceeding does not constitute a cognizable claim for habeas corpus relief. *See Anderson v. Sec'y for Dep't of Corr.*, 462 F.3d 1319, 1330 (11th Cir. 2006) (a state court's failure to conduct an evidentiary hearing on a post-conviction motion is not cognizable on habeas review).

prejudiced by the witnesses not being called to testify or that a different outcome would have occurred.

Defendant also contends obtaining DNA and toxicology reports would show the victim as the "aggressor" with a reputation for violence which would have allowed him to use "justifiable use of force" as a defense to the crimes. Defendant's claim that the victim may have been on psychotropic medication is not probative in light of all the evidence presented at trial. Therefore, Defendant's claim is merely conclusory and without merit. Defendant has failed to demonstrate how "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 at 687. The record does not support a finding that Counsel provided inadequate assistance. The Court finds that Counsel's actions/inactions do not rise to the level of ineffective assistance of counsel and Defendant failed to demonstrate a reasonable probability of a different trial outcome. Defendant's Ground 1 is conclusively refuted by the record and evidentiary hearing is not necessary.

(Ex. H at 237-38) (internal citations to the record omitted).  Moore asserts that the post-conviction court erred in applying each component of *Strickland*. (Doc. 18 at 21-22)  The record does not support Moore's argument.

In support of his Rule 3.850 motion, Moore attached witness statements that Angela was a violent, unpleasant person.  (App. H at 60-69)  None of the witnesses claimed to have observed the altercation between Moore and Angela that led to Angela's traumatic brain injuries.  Moore states that Angela "kneed him in the face as he was leaning over to pack some clothes in his preparation to leave." (Doc. 18 at 16)  Moore states that Angela then "began striking [me] with her fists and feet.  In defense, [I] struck back." (Doc. 18 at 16)  This assertion contradicts the evidence presented at trial.  Moore told the 9-1-1 operator that Moore had hit Angela.  When asked why he hit Angela, Moore replied, "I just found out she had an abortion

behind my back and I went ape shit on her." (T. at 33, 37)  Moore initially testified

that he did not remember anything that happened the night of the attack.  (T. at 601)

When pressed, Moore stated that he remembered arguing with Angela and that he

was angry because Angela blamed him for the abortion.  (T. at 602, 607, 609, 614)

Moore also testified that at the time of Angela's abortion their relationship was going

"better than it[] ever had.  She was actually being civil, she was being nice."

(T. at 607).  Later, Moore testified that he shoved Angela that evening – when she

tried to stop him from getting his sleeping bag – but that she did not fall.  (T. at 610)

Even when given the opportunity, Moore did not state at trial, as he does now, that

his use of force against Angela was justified and that Angela attacked him.  To the

contrary, Moore repeatedly said that he did not remember what happened and that

Angela goaded him into the attack.

At trial, the prosecution played a recording of Moore's telephone calls from

jail.  (T. at 386-421)  Moore told his mother that he "just freaking lost it" and that he

did not remember stomping Angela's head.  (T. at 387)  Moore also told his mother

that Angela goaded him by stating that she was "going to screw two guys today . . .

and stuff like that" and that the abortion thing "blew my mind."  (T. at 389)  Moore

told a co-worker that he "just freaking lost it" when Angela told him about the

abortion and threatened "to go out and fuck a couple of people before she left and

that's when I lost it."  (T. at 408-09)  Moore reiterated his statements in another

recorded conversation when he stated, "[t]hen I sat down at the dining room table

and she kept on going on and she told me the one thing I didn't want to hear, you know what I'm saying?  I'm like, Oh My God.  A few seconds later here I am."  (T. at 419)

Only after trial has Moore asserted that Angela attacked him.  The issue at trial was whether Moore stomped Angela's head on the night of the attack resulting in serious injury.  Whether Angela goaded Moore or hit Moore on other occasions is irrelevant.  The amount of drugs or alcohol in Angela's system on the night of the attack is irrelevant.  Trial testimony about Angela's troubled past, drug use, and unpleasant nature would have been proffered only to show Angela's bad character, but evidence about a victim's character is generally inadmissible.  *See* Fla. Stat. § 90.404(1).  Similarly, given Moore's admissions to the 9-1-1 operator, the police, his mother, and his co-workers and the eyewitness testimony that Moore stomped Angela's head, counsel was not unreasonable for choosing not to present evidence of Angela's alleged violent tendency.

The post-conviction court's adjudication of these claims was not unreasonable.  The state court applied *Strickland* and reasonably applied the facts.  Claims one and two are denied under 28 U.S.C. § 2254(d).

### b.  *Claim three*

Moore asserts that defense counsel was constitutionally ineffective for failing to investigate and impeach a state witness – Moore's nine-year-old step-daughter, Alexis Horton.  (Doc. 18 at 27)  Specifically, Moore asserts that Alexis (1) lied when

- 16 -

she testified that she witnessed Moore stomp on Angela's head and (2) lied about the

three days preceding the incident.  (Doc. 18 at 27-28)  Moore raised this claim in his

Rule 3.850 motion, and the post-conviction court denied the claim.  (App. H

at 240-41)  The court stated that under Florida law "the credibility of a witness is

limited to 'character relating to truthfulness.'"  (App. H at 241 (citing Fla. Stat.

§ 90.609 (2007)).  The court further stated:

> In the instant case, Miss Horton is nine years of age and
> testified to events that occurred when she was eight years of
> age. Miss Horton testified that Defendant stomped on her
> mother's head. Counsel's cross-examination was limited to
> challenging whether she actually witnessed the incident. These
> statements were consistent with statements she made to law
> enforcement, evidence presented at trial, and Defendant's
> testimony. Defendant alleges Miss Horton was inconsistent
> regarding witnessing a fight three days prior and observing the
> victim's injuries. These inconsistencies were negligible and do
> not rise to the level of undermining the Court's confidence in
> the jury's verdict. Moreover, Defendant's claim regarding
> statements by other witnesses would have been limited by
> [Florida Statute] § 90.609. The witnesses Defendant
> would have showed Miss Horton made "fraudulent" statements
> are without merit. None of the witness testimony would have
> been relevant or admissible to challenge the truthfulness of Miss
> Horton. Again, some statements are signed and notarized
> however some are not. All statements reflect opinions as to
> character of the victim and Defendant. Therefore, Defendant's
> Ground 3 is without merit.

(App. H at 241) (internal citations to record omitted).  Moore argues that the state

court's adjudication of this claim was unreasonable because the state court did not

specifically cite *Strickland* in the summary denial.  (Doc. 18 at 29)  Although not

citing *Strickland* in analyzing this particular claim, the state court's order analyzed the

ineffective assistance of counsel claim in a manner consistent with *Strickland*.  No

explicit citation to *Strickland* is required.  A state court need not cite Supreme Court precedent (or even be aware of it) if the decision is consistent with the precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002*); Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775-86 (11th Cir. 2003).  Accordingly, Moore's argument lacks merit.[7]

The state court's conclusions regarding claim three are fully supported by the record.  The direct examination of Alexis was brief; Alexis stated that Moore stomped more than once on Angela's head.  (T. at 146)  Alexis was not questioned regarding the three days leading to the attack.  On cross-examination, defense counsel questioned Alexis about whether she had witnessed the attack but did not question Alexis about incidents that occurred during the three days before the attack. (T. at 147-48)  Although Moore argues that counsel should have questioned Alexis about earlier incidents, cross-examination of a witness is limited to the subject matter of the direct examination and matters that affect the credibility of the witness.  Fla. Stat. § 90.612.  Further, the post-conviction court reasonably and understandably concluded that counsel was not ineffective for failing to undertake a risky and tenuous attack on the credibility of a nine-year-old girl, who testifies that she witnessed her stepfather brutally beat her mother.  Counsel's forbearing this attack is

---

[7] Elsewhere in the order denying Moore's Rule 3.850 motion, the post-conviction court specifically determines that *Strickland* governs a claim of ineffective assistance of counsel. (App. H at 236)

especially understandable when other evidence presented at trial supports the nine-year-old witness's statement.

The post-conviction court's conclusion that counsel was not ineffective was reasonably justified in light of the evidence presented in the state court proceedings. Accordingly, claim three is denied under 28 U.S.C. § 2254(d).

### c. *Claim five* [8]

Moore alleges that defense counsel was ineffective for failing to investigate, interview, and call witnesses to impeach Officer Jonathan Behnen, a prosecution witness.  (Doc. 18 at 30)  Moore claims that Officer Behnen (1) lied when he testified that Moore confessed to wanting to kill Angela and (2) lied when he testified that Alexis was hysterical when Officer Behnen arrived at the crime scene.  (Doc. 18 at 31)

Moore raised this claim in his Rule 3.850 motion, in which he argued also that counsel should have impeached Officer Behnen with evidence of Officer Behnen's past discipline for misconduct.  (App. H at 15)  The state court denied the claim, noting that Moore "does not allege any rights were violated by the officers in obtaining the statements, rather he alleges Deputy Behnen lied about Defendant's statements."  (App. H at 239)  The state court also noted that statements to the 9-1-1 operator and to another deputy were similar to those reported by Deputy Behnen

---

[8] This order omits a discussion of Moore's claim four and claim six (Doc. 18 at 51) because Moore abandoned each.

and that counsel would not have been allowed to cross-examine Deputy Behnen about an alleged reprimand. (App. H at 239)  The state court found that Moore demonstrated neither deficient performance nor resulting prejudice. (App. H at 239-40)  A review of the record supports these conclusions.

At trial, Officer Behnen testified that he responded to Moor's 9-1-1 call. When Officer Behnen arrived at Moore's home, Moore told Officer Behnen that Moore had hit Angela and that Angela needed help.  Upon entering the home, Officer Behnen noticed a young girl screaming and a woman on the floor with extensive head injuries.  After EMS arrived, Moore asked about Angela.  Moore told Officer Behnen that Angela "had had an abortion three days ago.  He killed her child.  He wanted to kill her."  (T. at 43-64; the transcript says "He killed her child.") On cross-examination, defense counsel elicited testimony from Officer Behnen that Moore had been extremely concerned about Angela's condition and had stressed to the police that Angela needed help.  (T. at 78)

Moore now asserts that defense counsel should have attempted to impeach Officer Behnen's testimony by raising unrelated instances of alleged police misconduct and by offering evidence that other witnesses had not heard the alleged confession.  (Doc. 18 at 30)  "[Florida Statute §] 90.609(1) permits credibility attacks in the form of evidence that the witness has a poor reputation for truthfulness, but it does not authorize proof of the witness's character for truthfulness or untruthfulness by evidence of specific acts." *Pantoja v. State*, 990 So.2d 626, 629 (Fla. 1st DCA

2008).  Section 90.610, Florida Statutes, provides for impeachment based on a witnesss's conviction for a crime punishable by more than one year in prison or a crime that involves dishonesty or a false statement.  Other than this limited exception, Florida's evidence code does not provide for impeachment of a witness by evidence of prior acts of misconduct.  Moore does not contend that Officer Behnen was convicted of a felony or a crime of dishonesty.  Therefore, Moore could not have elicited evidence of Officer Behnen's misconduct or discipline.

Moreover, contrary to Moore's assertions, defense counsel asked other witnesses if they heard Moore's alleged confession.  Counsel elicited testimony from Officer Canfield, the other responding police officer, (1) that Officer Canfield did not hear Moore state that Moore planned to kill Angela and (2) that there was no evidence indicating premeditation by Moore.  (T. at 133)  Counsel presented testimony from Diana Bauer, Moore's mother, that she was unaware of any plan or intention by Moore to kill Angela.  (T. at 171)  Moore testified that he never intended to kill Angela and that he never told anyone that he wanted to kill her.  (T. at 627)  In closing argument, counsel argued that Officer Behnen was "overly excited" at the crime scene and "twisted" Moore's statements.  (T. at 699, 703)

The state court's conclusion that counsel's performance was not deficient was reasonably justified in light of the evidence presented in the state court proceedings.  In addition, given the overwhelming evidence at trial, Moore fails to demonstrate

that he suffered prejudice from defense counsel's failure to further discredit Office

Behnen.  Accordingly, claim five is denied under 28 U.S.C. § 2254(d).

Any allegation not specifically addressed is without merit.

## V.   <u>Certificate of appealability</u>

Moore is not entitled to a certificate of appealability.  A prisoner seeking a writ

of habeas corpus has no absolute entitlement to appeal a district court's denial of his

petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate

of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a

substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

A petitioner must demonstrate that "reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542

U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that

"the issues presented were 'adequate to deserve encouragement to proceed further.'"

*Miller–El*, 537 U.S. at 335–36.  Moore fails to show either.

Because Moore is not entitled to a certificate of appealability, he is not entitled

to appeal *in forma pauperis*.

## CONCLUSION

Accordingly, claims seven through ten of the amended petition for the writ of

habeas corpus (Doc. 18) are **DISMISSED** as time-barred.  The remaining claims are

denied under 28 U.S.C. § 2254(d).  The action is **DISMISSED WITH**

**PREJUDICE**.  Moore is **DENIED** a certificate of appealability and **DENIED** leave

to proceed on appeal *in forma pauperis*.  The Clerk is directed to enter judgment, to

terminate any pending motion, and to close the case.

**ORDERED** in Tampa, Florida, on February 26, 2014.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE